UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Saul Horowitz,<br><br>Plaintiffs,<br><br>- against –<br><br>Spark Energy, Inc., Spark Holdco, LLC, Major Energy Services, LLC, Major Energy Electric Services, LLC, and Respond Power, LLC,<br><br>Defendants. | 1:19-cv-07534(DAB)<br><br>AMENDED COMPLAINT |

Plaintiff, Saul Horowitz ("Horowitz"), through his attorneys, Sarfaty & Associates, P.C., for his complaint states as follows:

## NATURE OF THE ACTION

1. This is a case for breach of an employment agreement and related tortious misconduct in the energy service company ("ESCO") industry. The Plaintiff is an accomplished, experienced and loyal business executive who consistently furthered Defendants' business goals, objectives and interests. Defendants, however, improperly manufactured a termination "for cause" when no cause existed. A Court has already denied Defendants' purported primary basis for claiming a "for cause" termination. Yet, Defendants have refused to pay Plaintiff all contractual amounts owed to him in terminating "without cause." Plaintiff is entitled to full compensatory and consequential damages including all reasonable fees and costs as well as all necessary injunctive relief concerning Defendants' misconduct.

1

## THE PARTIES

2. Plaintiff Horowitz is a domiciliary and citizen of the state of New York, residing in Spring Valley, New York.

3. Defendant Spark Energy, Inc. ("Spark"), a Delaware corporation with its principal place of business in Houston, Texas, is a national ESCO. Spark is a publicly traded company listed on NASDAQ Global under the ticker symbols "SPKE." Spark is the sole managing member of Spark Holdco, LLC.

4. Defendant Spark Holdco, LLC ("HoldCo") is a limited liability company organized under the laws of the State of Delaware with a principal place of business located in Houston, Texas. The members of Spark Holdco are: (1) Spark; (2) Retailco, LLC ("Retailco"); and (3) NuDevco Retail, LLC ("NuDevco"). Retailco is a limited liability company organized under the laws of the State of Texas, with its principal place of business in Houston Texas. The sole member of Retailco is TxEx Energy Investments, LLC ("TxEx"), which is a limited liability company organized under the laws of the State of Texas, with its principal place of business in Houston, Texas. The sole member of TxEx is W. Keith Maxwell III ("Maxwell"), Spark's founder, who is a citizen of Texas. NuDevco is a limited liability company organized under the laws of the State of Texas, with its principal place of business in Houston Texas. The sole member of NuDevco is NuDevco Retail Holdings LLC, which is a limited liability company organized under the laws of the State of Texas, with its principal place of business in Houston Texas. The sole member of NuDevco Retail is Electric HoldCo, LLC, which is a limited liability company organized under the laws of the State of Texas, with its principal place of

business in Houston Texas. TxEx is the sole member of Electric Holdco. As noted, Maxwell is the sole member of TxEx.

5. Defendant Major Energy Services, LLC ("MES") is a limited liability company organized under the laws of the State of New York with its principal place of business in Houston, Texas. Defendant MES conducts business from a location in Orangeburg, New York in Rockland County. Holdco holds all of the membership interests in MES.

6. Defendant Major Energy Electric Services, LLC ("MEES") is a limited liability company organized under the laws of the State of New York with its principal place of business in Houston, Texas. Defendant MEES conducts business from a location in Orangeburg, New York in Rockland County. Holdco holds all of the membership interests in MEES.

7. Defendant Respond Power, LLC ("RP") is a limited liability company organized under the laws of the State of New York with its principal place of business in Houston, Texas. Defendant RP conducts business from a location in Orangeburg, New York in Rockland County. Holdco holds all of the membership interests in RP.

8. Defendants MES, MEES, and RP are referred to collectively herein as "Major."

## JURISDICTION AND VENUE

9. This Court has personal jurisdiction over all of the Defendants under principles of specific and general jurisdiction as each has sufficient contacts with New York. The Defendants conduct continuous and systematic business in New York and the Defendants engaged in acts and transactions in New York specific to the events at issue in this case.

10. Venue is proper in the New York under CPLR § 503. Venue is also proper because Defendants have significant contacts in this county or their contacts in this county would be sufficient to subject them to personal jurisdiction.

## STATEMENT OF FACTS

### Horowitz is an Accomplished and Loyal Business Executive in the ESCO Industry

11. Horowitz is an accomplished and seasoned energy industry professional who joined Major as CEO and built and developed Major into a successful ESCO business that supplies electricity, natural gas and other related products and services to residential consumers primarily in the northeastern part of the United States. Horowitz has been in the ESCO business since 1997 when he founded and ran Econnergy Energy Company a/k/a Gateway Energy Services until 2006. Horowitz joined Major in 2008.

12. Under Horowitz's leadership, Major attracted other talented and knowledgeable ESCO professionals with many years of experience in the industry.

13. Horowitz grew Major into a successful regional ESCO business offering services to customers in eight states (Connecticut, Illinois, Maryland, Massachusetts, New Jersey, New York, Ohio and Pennsylvania) and the District of Columbia.

14. Under Horowitz's leadership, Major substantially expanded its business. Between 2008 and 2015, Major's customer count increased from 12,000 to 214,000. During that same period of time, Major's annual net income increased from $380,000 to over $12.5 million and its EBITDA from approximately $390,000 to almost $24 million.

### Spark's Acquisition of Major's Membership Interests

15. By the end of 2015, larger national ESCO businesses became interested in acquiring Major.

16. Between November 2015 and March 2016, National Gas & Electric, LLC ("NGE"), a private ESCO solely owned by Maxwell, negotiated with Major to acquire all of Major's membership interests. The transaction was premised upon continuing to run Major as a

small cohesive private entity by the same talented personnel who had transformed Major into a successful business.

17. In March 2016, Major entered into a Membership Interest Purchase Agreement (the "First MIPA") with National Gas & Electric , LLC("NGE") through which NGE purchased one hundred percent of the membership interests from Major, Horowitz, and other former Major members.  The First MIPA became effective in April 2016.

18. The First MIPA designated Horowitz as one of the "Senior Management Team" members whom NGE "would like to retain" based upon the same terms and conditions as existed prior to the transaction.  It provided that NGE would deliver to Horowitz at the closing a "New Employment Agreement" (the "Employment Agreement").

19. Pursuant to Section 7.1(d) of the First MIPA, NGE agreed that it "shall, or shall cause Major to enter into [an] employment agreement with ... Horowitz[.]" It also agreed that Major shall be responsible for "[a ]ny payments of salary under the [Horowtiz] Employment Agreement."

20. Section 11.7 of the First MIPA prohibited all parties, including NGE, from assigning the agreement without consent of the other party. This anti-assignment provision reads: "No assignment of this Agreement or of any rights and obligations hereunder may be made by any [Party], directly or indirectly (by operation of law or otherwise), without the prior written consent of the other Parties and any attempted assignment without the required consent shall be void."

21. On or about April 15, 2016, NGE and the former Major members closed the transaction and NGE became the owner of one hundred percent of the membership interests in all three of the Major companies.

22. In early May 2016, NGE executed a follow-up Membership Interest Purchase Agreement (the "Second MIPA") with HoldCo and its members. However, the former members, and Horowitz specifically, did not consent to the Second MIPA. Pursuant to the Second MIPA, Hold Co assumed all responsibilities and obligations toward the former Major members. On information and belief, HoldCo acquired all or substantially all of Major's membership interests and assumed control and responsibility over Major's obligations including its employment and employment contract obligations.

23. On information and belief, Spark is a party to the Second MIPA but is not a "buyer" of the Major membership interests. Spark's role, under the Second MIPA, is primarily that of a guarantor. Spark has certified that it does not hold direct interests in the Major companies.

24. The Second MIPA confirms that HoldCo and Spark were aware of the employment agreements with Major's senior management, including Horowitz, and key personnel.

25. The Second MIPA provided that HoldCo "acknowledges receipt of, and agrees that" Major is "bound by the employment agreements with members of the Senior Management Team" including Horowitz. It also provides that "payments of salary under the [Horowitz] employment agreement[s] shall be the responsibility of the [Major] Companies." As HoldCo's managing member, Spark is responsible for all operational, management, and administrative decisions relating to HoldCo's business.

26. The former Major members who sold their membership interests to NGE, have instituted a Southern District of New York action against NGE and Spark concerning earnout provisions under the MIPA transactions. *Horowitz v. National Gas & Electric, LLC,* 17-CV-7742 (JPO) (the *"National Gas & Electric* Case"). As part of the *National Gas &*

*Electric* Case, they have challenged the validity of NGE's assignment to Spark or HoldCo of contractual interests in the Major companies as well as NGE's obligations under the First MIPA and seek a declaratory judgment voiding the assignment.  In addition, in the *National Gas & Electric Case*, Judge Oetken noted that Spark claimed to be "a successor in interest to the contract at issue" and that, therefore, it "'cannot be liable for interfering with its own contract.'" *Horowitz*, 2018 WL 4572244, at *5 (quoting *LHR Inc. v. T-Mobile USA, Inc.*, 977 N.Y.S.2d 816, 821 (4th Dep't 2013)).

**The Employment Agreement**

27. Horowitz entered into and executed that Employment Agreement with each of the three Major companies, effective as of April 1, 2016.

28. Section 5.3 of the Employment Agreement contains an anti-assignment provision, which states: "This Agreement and a Party's rights and obligations herein may not be assigned or delegated by a Party without the prior written consent of the other Party." Horowitz was never asked to, nor did he, consent to any assignment or delegation of the Employment Agreement and the rights and obligations therein.

29. The Employment Agreement is governed and construed under the laws of the State of New York.

30. The Employment Agreement was entered into because Defendants "desire[d] to retain" Horowitz as an "executive".

31. The Employment Agreement provides for an "Initial Term" lasting from April 1, 2016 through December 31, 2018 "unless terminated earlier."  It also provides an option for "Renewal Terms," defined as one-year renewals that are automatically triggered "unless either Party provides the other with written notice of its intent not to renew this

Agreement at least sixty (60) days prior to the end of the Initial Term or Renewal Term, as applicable."

32. Section 3.2(e) allows either party to terminate the Employment Agreement "without cause."  It provides that: "Either party may terminate this Agreement at any time without cause upon one hundred eighty (180) days' notice to the other party."

33. Section 3.2(a) permits termination "[b]y the Company for cause" in two instances "upon the provision of prior witness notice to" Horowitz.  Major could pursue termination "for cause" had Horowitz "commit[ted] a material breach of any term of this Agreement" and the alleged breach was not cured within 30 days of receiving a "written notice" that "specifies] the nature of such breach."  Absent a material breach allegation, the only way Major could terminate "for cause" is by demonstrating, pursuant to Section 3.2(a)(ii), that Horowitz had been convicted for criminal behavior or "engaged in fraud, gross misconduct, breach of fiduciary obligations, or misappropriated, stolen or embezzled funds or property from the Company."

34. However, the Employment Agreement permits a Section 3.2(a)(ii) termination only where Horowitz is given a fair and adequate chance to defend himself.  Specifically, Major can only issue a "for cause" termination where it has made the "determine[ation], in good faith, following discussion with [Horowitz] providing [Horowitz] a reasonable opportunity to explain the underlying facts and circumstances."

35. Horowitz faithfully performed all of his responsibilities under the Employment Agreement.  In fact, Spark chose to retain Horowitz as an executive at Major even after the Initial Term expired, extending his contract for a Renewal Term lasting through 2019.

36. Never once did anyone from Spark express disapproval or any dissatisfaction with Horowitz's performance.

**Defendants' Improper "For Cause" Termination of Horowitz**

37. On March 27, 2019, Grae Griffin ("Griffin") contacted Horowitz, erroneously claiming that Plaintiff had purportedly violated Section 3.2(a)(ii) of the Agreement and threatening to terminate Horowitz "for cause." This email came from Griffin's "NuDevco" email account and identified him as NuDevco's vice president of HR. On information and belief, NuDevco is owned entirely by Maxwell and has an "affiliate" relationship with Spark. Griffin has identified himself on other correspondence as Spark's Vice President of Human Relations. Griffin stated that he was acting on behalf of the "Company" and was clearly referencing the terms of the Employment Agreement.

38. Around the same time, Griffin sent an almost identical letter to Wiederman, another executive in a similar situation to Horowitz.

39. Griffin accused Horowitz of intentionally deleting company files from his computer and copying those files to an external device in October 2017 when former Major members instituted a lawsuit against NGE and Spark (the "*Federal* Case"). Griffin did not identify any other basis for seeking to terminate Horowitz.

40. Horowitz denied that he had violated Section 3.2(a)(ii) and indicated that the issues would be addressed in the *Federal* Case.

41. On March 28, 2019, Nathan Kroeker ("Kroeker"), Spark's President and CEO, sent Horowitz a "Notice of Termination for Cause." Kroeker stated: "this letter shall serve as notice that your Employment Agreement as well as your employment with the Company are terminated for cause effective today." He defined the "Company" as the Major

entities "which were acquired by National Gas & Electric, LLC and subsequently dropped down to Spark HoldCo, LLC." In addition, this letter was sent on Major stationary, identified each of the Major companies, had Major's New York address, identified Kroeker as President and CEO of the Major Companies, and the signature line indicated it was being sent on behalf of Major. Thus, Kroeker was acting on behalf of both Spark and Major. In any event, Horowitz stopped receiving the benefits he was due under the Employment Agreement after this letter was sent, thereby constituting a breach of the Employment Agreement.

42. The notice does not claim any termination on grounds of breach pursuant to Section 3.2(a)(i) of the Employment Agreement.

43. Rather, Kroeker accused Horowitz of engaging "in actions that rise to the level of at least gross misconduct, breach of fiduciary duty, fraud or misappropriation, which are precluded under Section 3.2(a)(ii) of the Employment Agreement." Kroeker repeated Griffin's accusations about supposed intentional deletion of files and speculated incorrectly representations to the escrow agent.

44. Section 11.5 of the Second MIPA identifies Kroeker as HoldCo's President. Spark operates HoldCo and the individuals who orchestrated and implemented the termination are all Spark officers.

45. Kroeker sent a substantially similar letter to Wiederman on the same day.

46. Thus, less than 48 hours after accusing Horowitz (and simultaneously Wiederman) of intentionally deleting company files in 2017 and even less time after raising questions about Horowitz's representations to the escrow agent, Kroeker formally terminated Horowitz as Major's Senior Advisor effective immediately.

47. Approximately, two weeks later, Horowitz submitted an affidavit as part of a plaintiff filing in the *Federal* Case in which he denied Spark's deleted files accusations and demonstrated through substantial facts that the gross misconduct was incorrect.

48. On May 8, 2019, the Court in the *Federal* Case expressly rejected Spark's gross misconduct charge as to Horowitz.

49. There also is no merit to Defendants' eleventh-hour secondary accusation against Horowitz concerning purported misrepresentations. The accusations are simply false and Defendants did not follow the protocol of the employment agreement in investigating the accusations. In addition, the Court in the *National Gas & Electric* Case made clear that any claims about the escrow monies should be brought in arbitration between Horowitz and NGE. In fact, an arbitrator has denied that Horowitz engaged in any fraudulent conduct or any other gross misconduct with respect to Horowitz's representations to the escrow agent.

50. As a consequence, Major breached Section 3.2(a) of the Employment Agreement by terminating Horowitz' employment and the Employment Agreement purportedly "for cause" even though no cause existed. Defendants failed to demonstrate that Horowitz acted with gross misconduct or other culpable mindset, which is needed to terminate under Section 3.2(a)(ii). Defendants also failed in good faith to provide Horowitz with reasonable opportunity to defend himself against the accusations as the Employment Agreement further requires.

51. To the extent Defendants Spark and HoldCo validly assumed or were delegated Major's obligations under the Employment Agreement pursuant to the Second MIPA (notwithstanding the anti-assignment provisions in the First MIP A and the Employment

Agreement), Spark and HoldCo have breached Section 3.2 of the Employment Agreement. At the very least, they have tortiously interfered with the Employment Agreement.

52. Spark and HoldCo actively, affirmatively and maliciously took steps to procure a breach of the Employment Agreement. There is no question that Spark and HoldCo were aware of the Employment Agreement, which is referenced in the Second MIPA. Spark's CEO and President as well as its general counsel and head of HR all played a part in conjuring the inaccurate "for cause" accusations against Horowitz.

### **Defendants' Obligations to Horowitz for a "Without Cause" Termination**

53. Kroeker's March 28, 2019 letter to Horowitz was a notice of termination "without cause."

54. Pursuant to Articles 2 and 3 of his Employment Agreement, Horowitz is entitled to the full extent of compensation, benefits, severance and payments owed to him relating to a termination "without cause."

55. Under Section 3.2(e) of the Employment Agreement, the "effective date" of Horowitz's termination would be 180 days after receiving notice on March 28, 2019 or September 24, 2019.  Therefore, Horowitz is entitled to all compensation, bonuses, benefits and payments owed to him as Major's president up through that date.

56. Horowitz is also entitled to all of the "Payments and Benefits Following Termination" as set out in Section 3.3 of the Employment Agreement.

57. Pursuant to Section 3.3(a), Horowitz is owed a "Severance" payment, in "an amount equal to two hundred (200%) percent of the average annual compensation," which

includes "without limitation, Base Salary and any Bonus Compensation." The Severance shall be paid to Horowitz over a 24-month period immediately following expiration.

58. Section 3.3(b) provides that "not later than thirty days" following Horowitz's termination, Major is obligated to pay him:

> "(i) a lump sum amount equal to the sum of (Horowitz)'s unearned and unpaid salary, if any, through the effective date of expiration or termination; (ii) any bonus earned by (Horowitz) with respect to periods prior to the expiration or termination, but not yet paid to (Horowitz) as of the effective date of expiration of termination; (iii) a prorated portion . . . of any bonus previously committed by the Company to (Horowitz) . . . (iv) any unreimbursed business and entertainment expenses); (v) any unreimbursed employee benefit expenses that are reimbursable in accordance with the Company's policies, procedures or employee benefit plans through the date of termination; and (vi) death or disability benefits, if any, under and in accordance with the Company's employee benefit plans.

59. Moreover, in compliance with Section 3.3(c), Major is required to make additional payments to Horowitz during the "Benefits Continuation Period," which is defined as "the period beginning upon the termination or non-renewal, as applicable, of this Agreement and ending on . . . the date that is eighteen (18) months following the effective date of such expiration or termination." The Benefits Continuation Period, therefore, lasts until March 24, 2021.

60. Under Section 3.3(c), Horowitz is to be paid "within thirty (30) days after his termination . . . a lump sum or other agreed severance allowance in cash." Specifically, Horowitz is entitled to an additional lump sum cash payment for bonuses and benefits subject to Sections 2.2 and 2.5 of the Employment Agreement.

61. Section 3.3(d) of the Employment Agreement makes clear that all "[p]ayments made pursuant to Section 3 hereunder are in the nature of severance and/or liquidated damages" and Horowitz "is under no obligation to mitigate these damages."

62. Pursuant to Articles 2 and 3 of his Employment Agreement, Horowitz is owed all compensation, benefits, severance and payments in an amount of not less than $3 million.

63. Pursuant to Section 5.12 of the Employment Agreement, Horowitz is also entitled to all "reasonable costs and expenses (including without limitation, legal fees and court costs" relating to this case.

### COUNT I
### Breach of Contract
### (Against Major Parties)

64. Plaintiff repeats and realleges all of the allegations in the preceding paragraphs as if fully set forth herein.

65. On or about April 1, 2016, Horowitz entered into the Employment Agreement with Major.

66. The Employment Agreement is a valid and enforceable contract.

67. Horowitz has fully performed all of his obligations under the Employment Agreement.

68. Major has breached the Employment Agreement by improperly terminating Horowitz "for cause" without demonstrating any "for cause" basis under Section 3.2(a) of the Employment Agreement.

69. Major also breached Section 3.2(a) of the Employment Agreement by failing to engage in good faith discussions with Horowitz and providing him with a reasonable opportunity to explain the underlying facts and circumstances.

70. Major has failed to pay Horowitz the full amount of compensations, benefits, Severance and payments owed to him under Articles 2 and 3 of the Employment Agreement.

71. As a direct and proximate result of Major's breaches of the Employment Agreement, Horowitz has incurred compensatory and consequential damages.  Horowitz is also

entitled under Section 5.12 to payment of all costs and expenses including without limitation all legal fees and court costs incurred by him in connection with this litigation.

### COUNT II
### Breach of Contract
### (Against Spark and Spark Holdco)

72. Plaintiff repeats and realleges all of the allegations in the preceding paragraphs as if fully set forth herein.

73. The Employment Agreement is a valid and enforceable contract.

74. Horowitz has fully performed all of his obligations under the Employment Agreement.

75. To the extent the Employment Agreement or any rights and obligations therein were assigned or delegated to Spark and HoldCo, Spark and HoldCo have breached the Employment Agreement by improperly terminating Horowitz "for cause" without demonstrating any "for cause" basis under Section 3.2(a) of the Employment Agreement.

76. Spark and HoldCo have also breached Section 3.2(a) of the Employment Agreement by failing to engage in good faith discussions with Horowitz and providing him with a reasonable opportunity to explain the underlying facts and circumstances.

77. Spark and HoldCo have failed to pay Horowitz the full amount of compensations, benefits, Severance and payments owed to him under Articles 2 and 3 of the Employment Agreement.

78. As a direct and proximate result of Spark and HoldCo's breaches of the Employment Agreement, Horowitz has incurred compensatory and consequential damages. Horowitz is also entitled under Section 5.12 to payment of all costs and expenses including without limitation all legal fees and court costs incurred by him in connection with this litigation.

### COUNT III
### Tortious Interference With Contract
### (Against Spark and Spark HoldCo)

79. Plaintiff repeats and realleges each of the allegations in the preceding paragraphs as if fully set forth herein.

80. Plaintiff hereby pleads the below in the alternative to Count II.

81. Horowitz and Major entered into the Employment Agreement.

82. The Employment Agreement is a valid and enforceable contact.

83. Defendants Spark and Spark HoldCo knew of the Employment Agreement and its terms. In the Second MIPA dated May 2016, Spark HoldCo acknowledged receipt of and agreed that Major was to be bound by the terms of the Employment Agreement. In addition, Spark's public filings emphasize it "is responsible for all operational, management and administrative decisions relating to HoldCo business" and that it "conduct[s] our business through several brands" including Major.

84. Spark also publicly discloses that it "consolidates the financial results of [HoldCo] and its subsidiaries." Specifically, Spark acknowledges that it records Major's profits and earnings in its own financials. Spark even admits that it has "record[ed] employment contract termination costs" concerning "executives of the Major Energy Companies" and that it has "paid employment contract termination costs" to those former Major executives.  On information and belief, these employment contract termination costs concerning executive of the Major Energy Companies include costs for the termination of Horowitz's contract.

85. As has been detailed in preceding allegations, Defendant Major has breached the Employment Agreement including but not limited to improperly terminating Horowitz "for cause" when no such cause exists and failing to engage in good faith discussions and

to provide Horowitz with a reasonable opportunity to explain the underlying facts and circumstances.

86. Defendants Spark and Spark HoldCo actively and affirmatively took steps to induce or cause Major to breach the Employment Agreement and injure Horowitz.

87. As a direct and proximate result of Defendants Spark and Spark HoldCo tortiously interfering with Defendant Major's contractual obligations, Horowitz has sustained compensatory and consequential damages.

88. As a direct and proximate result of Defendants Spark and Spark HoldCo tortiously interfering with Defendant Major's contractual obligations, Horowitz is entitled to exemplary damages as well as all attorneys' fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, Horowitz respectfully requests that the Court:

a. award Horowitz compensatory damages, including prejudgment interest and post-judgment interest, in an amount to be proven at trial;

b. award Horowitz all consequential damages, including prejudgment interest and post-judgment interest, in an amount to be proven at trial;

c. award Horowitz all reasonable costs and expenses including without limitation all legal fees and court costs that Horowitz incurred in connection with this case;

d. award Horowitz all exemplary and/or punitive damage resulting from Defendants' misconduct;

e. award Horowitz such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMANDED

Horowitz demands a jury trial of all issues so triable.

Dated: October 30, 2019
     New York, NY

                                        Respectfully Submitted,
                                        Sarfaty and Associates, P.C.

                                        /s/  Jason Lowe
                                        By: Jason Lowe
                                            Eli Sarfaty
                                        Attorneys for Plaintiff
                                        1 North Sherri Lane
                                        Wesley Hills, NY 10977
                                        (845) 426-5710