**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------------------X
SAUL HOROWITZ,

|                        | Plaintiff,      | Civil Action No. |
|                        |                 | 19-cv-07534(DAB) |

- against –

SPARK ENERGY, INC., SPARK HOLDCO, LLC, MAJOR
ENERGY SERVICES, LLC, MAJOR ENERGY ELECTRIC
SERVICES, LLC, and RESPOND POWER, LLC

Defendants.
-----------------------------------------------------------------------------X

**<u>OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................... ii

Introduction ................................................................................................................... 1

Argument ...................................................................................................................... 3

   I.   The Summary Judgment Standard ....................................................................... 3

   II.   Plaintiff is Not Entitled to Summary Judgment Because They Did Not Properly
Terminate Horowitz For Cause ................................................................................... 3

      A.   Defendants' For Cause Determination is Not Entitled to Deference ............................... 3

      B.   Plaintiff Cannot Be Terminated For Seeking the Release of the Escrow Funds Because
Plaintiff Had No Fiduciary Duty to the Defendants With Respect to the Escrow Funds ........ 4

      C.   Horowitz Could Not Be Fired Based on his Transferring Documents From His
Computer to A Thumb Drive ........................................................................................ 7

   III.   Horowitz Was Not Given a Sufficient Opportunity to Respond to Defendants'
Allegations Against Him Before Defendants Made a Decision Regarding For Cause
Termination of the Employment Agreement ............................................................. 13

   IV.   Kroeker's Conflicting Testimony Creates Additional Issues of Fact Preventing
Summary Judgment ................................................................................................... 20

   V.   The Court Should Not Dismiss the Tortious Interference Claim ....................... 21

Conclusion .................................................................................................................. 23

## TABLE OF AUTHORITIES

**Cases**

*Amador v. Unemployment Ins. Appeals Bd.*, 35 Cal.3d 671, 678 (1984) .................................... 13

*Beach v HSBC Bank USA, N.A.*, 17CV5153, 2018 WL 3996931, at *8-9 (SDNY Aug. 21, 2018)3

*Boudreaux v Rice Palace, Inc.*, 491 F Supp 2d 625, 637 (WD La 2007) .................................... 12

*Boyle v. Cybex Intn'l,* 942 F. Supp. 115, 124 (E.D.N.Y. 1996) ....................................................... 4

*Bryant v. Food Lion Inc.,* 100 F.Supp.2d 346 (D.S.C.2000) .......................................................... 12

*Cabral v. Olsten Corp.,* 843 F.Supp. 701, 704 (M.D.Fla.1994) ..................................................... 12

*Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986) ............................................................................. 3

*Deutsch v Kroll Assoc., Inc.*, 31 Employee Benefits Cas 2060 (SDNY Sept. 23, 2003) .............. 12

*Gordon P. Getty Family Tr. v. Peltz*, 1998 WL 148425, at *10 (S.D.N.Y. Mar. 27, 1998) ......... 11

*Johnson & Johnson v. Guidant Corp.*, 2014 WL 3728598, at *20 (S.D.N.Y. July 22, 2014) ..... 11

*Konikoff v. Prudential Ins. Co. of America*, 234 F.3d 92, 97 (2d Cir. 2000) ................................. 3

*Mark IV Indus., Inc. v Kerns*, 2013 WL 12310665, at *12 (WDNY July 18, 2013) .............. 18, 19

*Markovits v. Venture Info Capital, Inc.*, 129 F.Supp.2d 647, 654 (S.D.N.Y. 2001) .................... 17

*Meisel v. Grunberg*, 651 F.Supp.2d 98, 116 (S.D.N.Y.2009) ........................................................ 5

*Mickle v. Christie's, Inc.*, 207 F.Supp.2d 237, 245 (S.D.N.Y. 2002) ............................................. 5

*Mlsna v. Unitel Communications, Inc.,* 91 F.3d 876, 881 (7th Cir.1996) .................................... 12

*Moore v. Williams College,* 702 F.Supp.2d 19, 24 (D.Mass. 2010) ............................................. 12

*Murtha v. Yonkers Child Care Ass'n, Inc.*, 383 N.E.2d 865, 866 (N.Y. Ct. App. 1978) .............. 22

*Needham v. Candies, Inc.*, 2002 WL 1896892, at * 3 (S.D.N.Y. Aug. 16, 2002) ........................ 17

*Nero v. Univ. Hospitals Mgmt. Services Org.,*  2006 WL 2933957, at *5 (N.D.Ohio Oct. 12,

    2006) .......................................................................................................................................... 12

*Palm Bay Intern., Inc. v Marchesi Di Barolo S.P.A.*, 796 F Supp 2d 396, 416 (EDNY 2011) ...... 5

*Paris v F. Korbel & Bros., Inc.*, 751 F Supp 834, 839 (ND Cal 1990) ................................. 12, 13

*Rachmani Corp. v. 9 East 96th St. Apartment Corp.*, 629 N.Y.S.2d 382, 386 (1st Dep't 1995) .. 17

*Slinger v Pendaform Co.*, 3:17-CV-00723, 2021 WL 75640, at \*4 (MD Tenn Jan. 8, 2021) ........ 4

*Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000)....................................................... 3

*Williams v. Utica Coll. of Syracuse Univ.*, 453 F.3d 112, 116 (2d Cir. 2006) .............................. 3

*Zickafoose v. UB Services, Inc.,* 23 F.Supp.2d 652, 655 (S.D. West Virginia 1998)................... 13

**Rules**

Fed. R. Civ. P. 56 ..................................................................................................................... 3, 18

## Introduction

Defendants bring this motion for summary judgment seeking to show that their termination of Plaintiff, Saul Horowitz ("Horowitz"), was justified under the "for cause" section of his Employment Agreement. However, "for cause" is a defined term and Defendants fail to show that the facts and circumstances in this case justified termination for cause.

Initially, Defendants fail to justify their interpretation of what is considered "gross misconduct". Determinations of whether conduct rises to the level of "gross misconduct" is something that is not appropriate for summary judgment because it depends on the facts and circumstances of a case, which must be weighed by the finder of fact. This is even more so in a case like this, where Defendants were required to act in "good faith" in making that determination.

In this case, however, even the most basic facts are disputed. Horowitz was essentially terminated for allegedly deleting documents in violation of a litigation hold notice. However, Horowitz denies receiving the notice. Horowitz also denies deleting any documents. Horowitz denies any deliberate violation of the litigation hold notice and deliberate conduct would be required to justify "for cause" termination. Critically, a court has already agreed that Horowitz did not commit misconduct, let alone gross misconduct.

In addition, the litigation hold notice was sent directly to Horowitz by Major, in the midst of a litigation by Horowitz against Major's then parent, Spark. Such activity, sending a legal hold notice directly to a represented party, is likely improper. The notice demand should have been sent directly to Horowitz's attorney who could advise him properly. Instead, the hold notice was sent directly to Horowitz and he was advised to speak to Major's general counsel, not his attorney, regarding any questions. This was also, likely, improper litigation activity.

1

In addition, Defendants terminated Horowitz for seeking the release of escrowed funds on behalf of parties who had sold their interest in Major to Major's then parent. As part of that transaction, all parties <u>agreed</u> that Horowitz would be a Major employee while having different, possibly conflicting duties, as Sellers' Representative. When Horowitz sought the release of the funds, he was acting strictly in his role as Sellers' Representative, <u>not</u> as an employee of Major. However, Defendants then used his actions as Sellers' Representative to claim a breach of his Employment Agreement. This was done so in bad faith considering the parties agreed to the separate roles and duties. It would be just as nonsensical to claim Horowitz violated his escrow duties by acting as an employee of Major. Horowitz had no authority to act on behalf of Major regarding the escrow funds and never claimed to be doing so.

Finally, the Employment Agreement guaranteed Horowitz would receive notice of any alleged "for cause" reason for termination and that he be afforded an opportunity to respond prior to any determination made by Major regarding "for cause" termination. In this case, it is clear that Defendants made the decision to terminate Horowitz before giving him an opportunity to respond and only thinly attempted to create a record of compliance with the Employment Agreement by giving Horowitz less than 24 hours to respond. No serious discussion, as is required by the Employment Agreement, occurred. Under any circumstance, the law requires significantly more notice and an opportunity to respond than Defendants provided. Exactly what opportunity is required though, depend on the facts and circumstances of a case and therefore, once again, this is an issue that must be left to the finder of fact.

Therefore, Defendants' motion for summary judgment must be denied in its entirety.

<u>**Argument**</u>[1]

## I.     The Summary Judgment Standard

Summary Judgment is appropriate only when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating that no genuine issue exists as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986). An issue of fact is "material" if it "might affect the outcome of the suit under the governing law." *Konikoff v. Prudential Ins. Co. of America*, 234 F.3d 92, 97 (2d Cir. 2000). "A dispute regarding a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party ...." *Williams v. Utica Coll. of Syracuse Univ.*, 453 F.3d 112, 116 (2d Cir. 2006) (internal quotation marks and citation omitted). "When viewing the evidence, the court must assess the record in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000). In this case, assessing the evidence in the light most favorable to Plaintiff and drawing all reasonable inferences in favor of Plaintiff makes it clear that there are factual issues which prevent this Court from granting summary judgment.

## II.     Plaintiff is Not Entitled to Summary Judgment Because They Did Not Properly Terminate Horowitz For Cause

### A.  Defendants' For Cause Determination is Not Entitled to Deference

Defendants' "for cause" determination is not entitled to deference. "[C]ourts give deference to 'for cause' terminations only 'where that term is not defined.'" *Beach v HSBC Bank USA, N.A.*, 17CV5153, 2018 WL 3996931, at *8-9 (SDNY Aug. 21, 2018) quoting *Welland*,

---

[1] For the purposes of brevity, the facts will not be restated at the beginning as they are stated in the counter statement of facts ("CSOF") and throughout this brief.

2003 WL 22973574, at *13. In this case, the parties do <u>not</u> dispute what constitutes "cause", rather, there is a dispute about what activity fits into the definition. See Exhibit 10, Section 3.2. Nevertheless, since there is an actual agreed upon definition of items that may be considered "for cause", Defendants do not have the discretion they would have if there was no definition. Defendants <u>must</u> show that their reason for terminating Horowitz fits within the agreed upon definition.

Therefore, the Court must do an analysis to determine if Horowitz's behavior qualifies as under the terms of the Employment Agreement. As Defendants note, the meaning of the words "for cause" in an employment agreement depends on (1) the definitions in the agreement, (2) the intent of the parties, and (3) the facts and circumstances of each particular case. *Boyle v. Cybex Intn'l,* 942 F. Supp. 115, 124 (E.D.N.Y. 1996). In this case, the definition in the agreement are <u>not</u> clear.  Horowitz disputes what was the intent of the parties and the facts and circumstances make it clear that Defendants did <u>not</u> have a "for cause" reason to terminate Horowitz. In fact, Major's CEO and general counsel at the time the Employment Agreement were entered into dispute Major's now interpretation of the Employment Agreement. Op. Ex. 23 and 24. Since there are clear disputes about the factual issues in the case, Defendants' motion for summary judgment must be denied.

### B.  Plaintiff Cannot Be Terminated For Seeking the Release of the Escrow Funds Because Plaintiff Had No Fiduciary Duty to the Defendants With Respect to the Escrow Funds

As the statement of facts makes clear, the parties had a complex relationship. SOF, ¶ 19.[2]

Though Plaintiff continued to work for Major during the earnout period, Plaintiff also had a role

---

[2] As an initial matter, there is recent support for the proposition that the burden is on Defendants in this case to show that the contract was terminated for cause. *Slinger v Pendaform Co.*, 3:17-CV-00723, 2021 WL 75640, at *4 (MD Tenn Jan. 8, 2021).

as Sellers' representative during the same time period. SOF, ¶ 19. This is something that the parties specifically contemplated, negotiated, and agreed to. SOF, ¶ 19. Parties are permitted to agree to such dual and conflicting loyalties. *Mickle v. Christie's, Inc.*, 207 F.Supp.2d 237, 245 (S.D.N.Y. 2002)("The Consignment Agreement effectively contemplated transactions in which Christie's would be required to serve dual loyalties—to both buyer and seller of auctioned properties—and also authorized Christie's under the stated conditions to protect its interests before those of the consignor. Such circumstances are permissible insofar as unambiguously agreed to by the parties.") Similarly, "an agent owes a fiduciary duty only with respect to matters within the scope of his agency." *Palm Bay Intern., Inc. v Marchesi Di Barolo S.P.A.*, 796 F Supp 2d 396, 416 (EDNY 2011), affd sub nom. *Taub v Marchesi di Barolo S.p.A.*, 480 Fed Appx 643 (2d Cir 2012)(quotations and citations omitted); *Meisel v. Grunberg*, 651 F.Supp.2d 98, 116 (S.D.N.Y.2009) ("Similarly, under the facts alleged no fiduciary relationship exists with Michael with respect to paragraph 67(h) since the conduct alleged falls outside of Michael's role as Fanny's agent; plaintiff and Michael are more properly characterized as 'two parties acting and contracting at arm's length' in connection with the Buy–Out ...")

As Sellers' Representative, Horowitz had a fiduciary duty to the sellers. CSOF, ¶ 19. In addition, Horowitz believed the sellers had a right to seek distribution of the escrow funds. CSOF, ¶ 44, 45, and 47. Had Plaintiff not sought distribution of the funds when they were due to the sellers, Plaintiff would have violated his fiduciary duty to the sellers. *Id*. The fact that the MIPA/Escrow Agreement was agreed to by Defendants while, at the same time, Defendants agreed to enter into an employment agreement with Plaintiff, is an acknowledgement that Plaintiff would, at times, have to act on these split loyalties. CSOF, ¶ 19.[3] Therefore, Defendants

---

[3] In fact, the parties even agreed that all of the documents together would be considered the "Transaction Documents". CSOF, ¶ 19.

cannot complain that Plaintiff violated his fiduciary duty to the Defendants as his employer (and claim that is a violation of his Employment Agreement) when the Defendants knew of and agreed to the split duties of Plaintiff. CSOF, ¶ 19. Defendants have not explained how Horowitz, performing a non-employment function in a capacity Defendants agreed Horowitz could dually occupy while being employed with Major, could breach his employment fiduciary duty to his employer or how those actions could constitute gross misconduct under the Employment Agreement.

Horowitz did not have the authority, nor did he ever try to exercise authority, on behalf of the Defendants with regards to the escrowed funds. Defendants do not make any claim that Plaintiff acted in his role as an employee of Defendants to seek the release of the escrowed funds.

In addition, in reading the transaction documents as a whole, as the Court must do since the Employment Agreement was part of the overall transaction[4] and referenced in the MIPA, Defendants did have a remedy for the Sellers seeking the release of escrowed funds without authority. SOF, ¶ 47.  Namely, Defendants could seek to have the funds returned through binding arbitration. Op. Ex. 18, 19. Defendants did seek to have the funds returned and the funds were in-fact returned. Op. Ex. 19. Allowing Defendants to also terminate the Employment Agreement for the same actions is essentially allowing for a second remedy not bargained for between the parties. There is no provision in either the Escrow Agreement or Employment Agreement that states Sellers' Representative misconstruing the terms of the Escrow Agreement shall be considered a breach of an employment duty. The Escrow Agreement provided the remedy, which Spark received.

---

[4] SOF, ¶ 19 and Exhibit 5, Section 1.1 definition of Transaction Documents.

In fact, in the Escrow Arbitration, no claim at all was alleged against Plaintiff for breach of fiduciary duty. The one tort claim asserted, for fraud, was denied by the arbitrator. Op. Ex. 19. Albeit, Plaintiff was found to have erred as Sellers' Representative but his actions were not found to be tortious in any way. *Id*.

Therefore, it is clear that Horowitz's actions as Sellers' Representative was separate from his role as an employee of Major. The parties agreed that Horowitz would have dual roles and a remedy was agreed upon for any conflict regarding the release of the escrow funds. That remedy does not include terminating Horowitz's Employment Agreement. Considering Spark lost its tort claim against Horowitz on this issue, there is, at least an issue of fact as to whether Horowitz acting in a non-employment capacity falls under any of the definitions of "for cause" in the Employment Agreement.

### C. Horowitz Could Not Be Fired Based on his Transferring Documents From His Computer to A Thumb Drive

Defendants had no right to terminated Horowitz under his Employment Agreement on the basis that he transferred documents from his Major workstation to a thumb drive. At that time, Horowitz, as Sellers' Representative, was actively litigating with Spark.[5] CSOF, ¶ 26. The documents at issue were on a Major computer and allegedly pertained to a litigation that Major was not a party to but that Horowitz was. CSOF, ¶ 26. Spark was seeking to force Major to image its computers so that they could use the information they found on Major's computers against Horowitz and the other Sellers. CSOF, ¶ 26-28.[6] Spark was attempting to do an end run

---

[5] As an initial matter, Horowitz has always maintained that he did not intentionally delete any documents. CSOF, ¶ 38. To the extent that Defendants continue to try and justify termination on anything more than a simple error, there is a dispute of fact which must be resolved by the finder of fact.

[6] Spark seems to confirm this by arguing that summary judgment should be granted to it on a economic interest theory. The fact that Spark, would direct its subsidiary, who it claims has the same interest as it, to have that subsidiary's general counsel contact a represented party bolsters the idea that Spark was committing serious litigation misconduct.

around the general litigation procedures of demanding preservation through contact only with counsel and asking for their adversary's documents through the discovery process. *Id*.

In light of the above, Horowitz copied certain documents he believed to either be privileged or personal in nature for review by his attorneys to determine whether they needed to be produced during litigation. CSOF, ¶ 36. In addition, Horowitz misunderstood and did not realize that even personal documents on his workstation could not be moved. CSOF, ¶ 35-37.

The context is also important. First, Horowitz denies receiving and reading the hold notice. CSOF, ¶ 28. In addition, Horowitz transferring documents to a thumb drive was permitted in the regular course of business.[7] CSOF, ¶ 62. Horowitz was especially sensitive to Spark reviewing his personal finances and information because the parties had an exceptionally acrimonious relationship. CSOF, ¶ 62. Nevertheless, not only did Horowitz not believe he was deleting documents, he believed he would have two copies of the documents on two different thumb drives. CSOF, ¶ 37-39. Horowitz never acted with an intent to destroy any documents.[8] *Id*. In addition, Horowitz turned over the thumb drives in his possession and the Court later ruled that those thumb drives did not need to be produced to Spark because there were zero non-duplicate files on the thumb drive that had not already been produced.[9] *Id*.

Horowitz also objects to Spark's characterization of his whatsapp communications with Wiederman in that there were ongoing issues regarding protecting personal, non-relevant,

---

[7] The Court in the Earnout Litigation agreed with this noting, "I am not persuaded by defendants' argument in their reply brief that certain actions by plaintiffs, such as connecting various thumb drives to their workstation computers, forwarding e-mails to their Gmail accounts, or uploading a new version of software, likely revealed anything nefarious in terms of an intent to destroy or hide evidence, as opposed to standard conduct on a work computer." Op. Ex. 22, p. 22.

[8] The Court in the Earnout Litigation noted, "…their failure to preserve or produce responsive files was careless rather than the intentional destruction of relevant evidence." Op. Ex. 22, p. 21.

[9] The Court in the Earnout Litigation noted, "I do not find at this time that it was likely that documents relevant to the claims and defenses in this case were ultimately lost, or that defendants were prejudiced by plaintiff's conduct, other than the fees and costs incurred in connection with this motion." Op. Ex. 22, p. 21.

and privileged communications from disclosure to Spark. SOF, ¶ 27. It is certainly legitimate for Horowitz/Wiederman to be considered in the broader context of the dynamics of the Earnout Litigation and the fact that the litigation hold notice confusingly directed questions to be addressed to Major's counsel[10] rather than Sellers' own attorney.

Nevertheless, when the document issue came to light in the Earnout Litigation March 2019, Horowitz's litigation counsel in that action addressed the issue with Spark's litigation counsel, and Horowitz gave every thumb drive in his possession back to sellers' discovery vendor for further review. CSOF, ¶ 30, 39. After Horowitz had a chance to review the forensic analysis that his counsel had coordinated with Spark's counsel, it became clear that the allegations of nefarious conduct were baseless. CSOF, ¶ 39. The forensic expert confirmed that Horowitz copied some files to a thumb drive which was turned over to the forensic expert.[11] CSOF, ¶ 30, 39. The total number of files found on Horowitz's drive was 6,962. CSOF, ¶ 30. Horowitz had zero documents which had a date created of October 16, 2017. CSOF, ¶ 30. Moreover, by March 2019, only 198 files had been deleted of which, Transperfect was able to locate 130 of the documents. CSOF, ¶ 30. The remaining file names that could not be retrieved either related to documents that were discoverable from other sources, in the possession of Major and Spark, or were irrelevant to the Earnout Litigation.[12] CSOF, ¶ 30, 37.

Horowitz did not have the opportunity to raise the above issues when Spark confronted him because he was not presented the forensic report or given enough time to review that

---

[10] Once again, Spark now claims Major was united in economic interest with it and thus this direction is essentially directing Horowitz to speak to opposing counsel rather than his own about his legal rights regarding documents in a litigation between the parties.

[11] As is noted herein, Horowitz turned over a total of 6 thumb drives, in the abundance of caution. Not all of them were relevant but they were all imaged and analyzed.

[12] The Court in the Earnout Litigation noted, "given the proportion of nonresponsive to responsive files located in the various electronic storage locations associated with Horowitz and Wiederman, I find it unlikely that the few recoverable files are relevant. As noted, I think it is likely that they were attempting to delete or transfer nonresponsive files…" Op. Ex. 22, p. 21.

forensic report with his attorneys and experts. CSOF, ¶ 47. Nevertheless, after Horowitz did have a chance to respond in the litigation, the judge in the Earnout Litigation has <u>already ruled</u> that Horowitz's explanation for his transferring of files is credible and does not exhibit any sort of deliberate attempt to injure Defendants. CSOF, ¶ 30, 37, 61.   Judge Oetken noted that Horowitz was careless rather than acting with intent. *Id*.

In addition, just like with the escrow funds, Horowitz had more than one relationship with Defendants. CSOF, ¶ 19. Horowitz was an employee of the Defendants but he was also Sellers' Representative and the counterparty (and named plaintiff) in a pending litigation between Sellers and Spark regarding an earnout that the Sellers' claim they were entitled to involving the Major Entities. CSOF, ¶ 19. The preservation notice was specifically directed at Sellers, not all employees of Major. Defendants' Ex. I (see distribution list attached thereto). Thus, Horowitz and Wiederman were in the position of being both employees and adversaries of Spark while employees of Major (a Spark subsidiary). <u>No</u> notice was given from Spark's counsel to Sellers' counsel that the imaging would occur and neither Horowitz or Wiederman were informed how their potentially privileged and personal material would be treated. CSOF, ¶ 28; Op. Ex. 16, Lundstrom Dep. 42:17-43:23.

In light of the above, sending a legal directive from a lawyer representing Spark's interest directly to two represented parties, could be improper litigation activity. Certainly, neither Horowitz nor Wiederman knew precisely how to handle the situation in light of being contacted by counsel but without their counsel's knowledge. Nevertheless, creating a trap situation in the course of active litigation is an improper ground to later claim misconduct. Especially when, as part of that litigation, a ruling has already been made that there was no deliberate misconduct. Certainly, once again, there is a question of fact if Defendants were acting in "good faith" (as the

Employment Agreement requires) to find that an error made in a trap they improperly set qualifies as gross misconduct.

Most critically, Adam Small, Major's former general counsel, notes that Horowitz's actions do not amount to gross misconduct and he should not have been fired for the actions. Op. Ex. 23. Similarly, Major's former CEO, and the person who signed Horowitz's employment agreement, do not believe these actions constitute grounds to fire somone "for cause" under the Employment Agreement. Op. Ex. 24.[13] The fact that Defendants' former general counsel and CEO, the very employees who were present when the employment agreement was negotiated and executed, do not believe that there are factual grounds on which a "for cause" termination was appropriate shows that, at least, there is an issue of fact precluding summary judgment.

Courts have found that similar determinations as to whether a firing was justified under an employment contract to be inappropriate for summary judgment. *Johnson & Johnson v. Guidant Corp.*, 2014 WL 3728598, at *20 (S.D.N.Y. July 22, 2014) ("The determination of [whether a breach of an agreement is material] is a complicated question of fact ... [and is] especially unsuited to resolution by summary judgment." (quotation marks omitted, alteration and ellipsis in original)); *Gordon P. Getty Family Tr. v. Peltz*, 1998 WL 148425, at *10 (S.D.N.Y. Mar. 27, 1998) ("The disagreement over the materiality of the write-off amount in the investment decision, is a factual inquiry related to the parties' expectations at the time. Such matters cannot be resolved on summary judgment." (citations omitted)). In this case, given the complex factual pattern between the parties and denials by Horowitz that he received and read the hold notice, the previous findings that Horowitz did not act to deliberately disobey a

---

[13] The declaration of Alper was signed as part of the related Wiederman case earlier in this litigation. However, it notes facts about the meaning of the language of the Employment Agreement and the conduct of Wiederman and Horowitz is similar enough that there is at least an issue of fact as to whether it was appropriate to terminated Horowitz.

company directive, coupled with the testimony from prior major executives contesting

Defendants' determination of cause was appropriate, it is clear that the issue of whether

Horowitz was properly terminated for cause must be decided by the jury.

It can also be instructive to look to what has been considered misconduct in other

employment contexts. A party is not entitled to COBRA benefits if they are terminated for gross

misconduct. Thus, the issue of gross misconduct is raised in those cases. In that context, Courts

have generally found that mere negligence, mistake, carelessness, or incompetence does not rise

to the level of gross misconduct. *Moore v. Williams College,* 702 F.Supp.2d 19, 24 (D.Mass.

2010) quoting *Mlsna v. Unitel Communications, Inc.,* 91 F.3d 876, 881 (7th Cir.1996).

Gross misconduct generally has not been found where the behavior at issue was

"inadvertent or sporadic-for example, where a forgetful employee occasionally neglected an

employer's instructions" or where the misconduct amounts to a simple mistake or inattention to

detail. *Cabral v. Olsten Corp.,* 843 F.Supp. 701, 704 (M.D.Fla.1994)(citations omitted); *Nero v.*

*Univ. Hospitals Mgmt. Services Org.,* No. 1:04vc1833, 2006 WL 2933957, at *5 (N.D.Ohio Oct.

12, 2006) (distinguishing *Bryant v. Food Lion Inc.,* 100 F.Supp.2d 346 (D.S.C.2000), *aff'd,*

8 Fed.Appx. 194 (4th Cir.2001)). Like in other contexts, the determination of gross misconduct

is ill suited for summary judgment. *Deutsch v Kroll Assoc., Inc.*, 31 Employee Benefits Cas 2060

(SDNY Sept. 23, 2003)(summary judgment inappropriate because "there is a genuine and

material factual dispute over whether Deutsch was terminated for "gross misconduct".);

*Boudreaux v Rice Palace, Inc.*, 491 F Supp 2d 625, 637 (WD La 2007)[14].

---

[14] The Court also notes that gross misconduct in a different statute applicable to federal employees, is a "flagrant and extreme transgression of law or established rule of action for which an employee is separated and concerning which a judicial or administrative finding of gross misconduct has been made." *Paris v. F. Korbel & Bros., Inc.*, 751 F.Supp. 834, 838 (N.D.Cal.1990); cf. 5 C.F.R. § 890.1102 (2001). Defendants do not come close to meeting that standard in this case.

In this case, Defendants terminated Plaintiff for one, unintentional act that occurred more than two years before he was terminated.[15] Thus, Defendants had direct evidence that Horowitz continued to faithfully perform his duties for Major despite a one-time, disputed action in the context of a litigation between the parties. Legally, this provides for insufficient grounds to find gross misconduct on a summary judgment motion.

Looking in a broader context, the conduct at issue must generally be "outrageous, extreme or unconscionable" to constitute gross misconduct. *Zickafoose v. UB Services, Inc.,* 23 F.Supp.2d 652, 655 (S.D. West Virginia 1998). Some courts have also determined that the conduct must evince an "evil design" against the employer or, absent malice, "an intentional and substantial disregard of the employer's interests." *Paris v F. Korbel & Bros., Inc.*, 751 F Supp 834, 839 (ND Cal 1990) (quoting *Amador v. Unemployment Ins. Appeals Bd.*, 35 Cal.3d 671, 678, 200 Cal.Rptr. 298, 677 P.2d 224 (1984)). The facts presented to do not show any intentional act of misconduct. They also do not show any "evil design" or plan by Horowitz at all.

In total, it is clear that Horowitz did not commit any act that would fall into the category of what the law considers to be gross misconduct. Even if the Court has doubts as to whether Horowitz will ultimately prevail at trial, the dispute regarding the context and intention of the parties must be weighed by the trier of fact and therefore summary judgment is not appropriate.

III.   **Horowitz Was Not Given a Sufficient Opportunity to Respond to Defendants' Allegations Against Him Before Defendants Made a Decision Regarding For Cause Termination of the Employment Agreement**

Pursuant to the Employment Agreement, prior to Major deciding to terminate the Employment Agreement "for cause", Major was required to provide Horowitz a "reasonable opportunity to explain the underlying facts and circumstances" of any alleged "for cause" reason

---

[15] Once again, Horowitz denies that he even received the hold notice to know what was specifically directed of him. He testified he may have learned of the issue second hand. CSOF, ¶ 28.

for termination. CSOF, ¶ 52. The evidence is clear that Major did not provide Horowitz with that opportunity.

The first time any issue was raised with Horowitz regarding his conduct was in a phone call Griffin made to Horowitz on March 27. CSOF, ¶ 52; Op. Ex. 17. During that phone call Horowitz was given a short statement as to the alleged misconduct that he committed. Horowitz denied any wrongdoing and requested a chance to respond.

Nevertheless, Griffin then sent an email to Horowitz on March 27 that was nearly identical to an email that Wiederman received concurrently to Horowitz. CSOF, ¶ 52. In response, Horowitz noted that "the subject matters which you raise in your email are part of the ongoing litigation". *Id*. Griffin knew this to be true and knew that these issues should have been raised between counsel. Op. Ex. 4, 131:13-16; Op. Ex. 17A (In correspondence with Wiederman, Griffin states, "Our respective outside litigation firms are addressing, in the context of the lawsuit, the implications of the document destruction that our forensic analysts discovered.") Thus, it is clear that this was a completely inappropriate attempt by Major to induce Horowitz into making party opponent statements outside the presence of counsel. Op. Ex. 4, 131:13-16; Op. Ex. 17A (where Griffin acknowledges that Horowitz as Sellers' representative is represented by counsel and responding to the motion on the document issue). Once again, Defendants' attorneys were in direct contact with Horowitz's attorneys regarding these issues at the time that the call was made and the email was sent. Op. Ex. 17A. This is yet another example of Defendants committing possible litigation misconduct in order to try and manufacture a "for cause" termination basis against Horowitz.

Nevertheless, Horowitz noted the inappropriate nature of the email and forcefully denied that he committed gross misconduct. CSOF, ¶ 52. Horowitz denied that he ever intended to

delete company data or do anything wrong. CSOF, ¶ 38, 52, 53. Horowitz denied any misconduct with respect to the escrow funds. CSOF, ¶ 44, 45, 54.

Horowitz also raised that the issue with the escrow funds regarded his actions as a counterparty in a transaction with Spark and therefore could not be considered misconduct towards Major. CSOF, ¶ 44, 45, 54. Once again, the parties negotiated and agreed that Horowitz was entitled to occupy different roles which would, at times, require possibly conflicts. CSOF, ¶ 19. Horowitz cannot violate a duty in one contract for exercising rights in a different, related, contract that the parties agreed to. It seems that Defendants did not even consider that point when raised by Horowitz.[16] Certainly, the trier of fact is at least entitled to consider whether in the rush to fire Wiederman and Horowitz, Defendants even considered the fact that they agreed to allow Horowitz to act as both an employee of Major and Sellers' Representative, with the separate duties those different roles would entail.

Horowitz referenced the litigation and improper nature of Major's actions multiple times in his response to Griffin.  CSOF, ¶ 52. It was obvious that Horowitz needed to speak to his attorney and forensic expert about this matter to appropriately respond. Defendants did not afford Horowitz the opportunity to do so.[17]

In addition, as is noted in the Wiederman brief, it is clear that Defendants first rehearsed some of their reasoning on Wiederman. First, Defendants called Wiederman on March 26 only mentioning the document retention issue. See Wiederman Brief in Opposition to MSJ, Pages 17-18. Then realizing that this was too weak upon which to solely rely, Defendants added the

---

[16] Certainly, Defendants have not presented any evidence that this was considered before terminating his employment.

[17] The length of time a party is given to respond is an obvious issue of fact. The contract does not define the appropriate time to respond and does not give Major the right to unilaterally set the time to respond. Considering the complex nature of this dispute, that Defendants spent two months investigating these issues, and that both Horowitz and Wiederman demanded additional time to respond shows that there is an issue of fact for the jury to decide as to whether an adequate amount of time was provided.

escrow issue. *Id*. Only after Defendants had a round of calls and emails with Wiederman did Defendants concurrently contact Horowitz and Wiederman via phone and send a virtually identical letter to both Wiederman and Horowitz providing each with merely 24 hours to respond. Op. Ex. 17 and 17A. This shows the ad hoc nature of Defendants' rush to fire Wiederman and Horowitz in that neither was given their contractual opportunity to respond and discuss the allegations against them but Wiederman, for some reason, was given slightly more time and opportunity than Horowitz.

The timeline though, makes it clear that Defendants made their decision on termination before either the phone call or email to Horowitz. Defendants filed their motion for sanctions on March 25, 2019, just one day before they notified Wiederman of their plan to terminate his employment agreement. This was despite the fact that Defendants had been investigating the issues for approximately two months. CSOF, ¶ 57. When the email was sent concurrently to both Wiederman and Horowitz, they were each afforded less than 24 hours to respond without even being provided the forensic report they were expected to respond to and despite Defendants granting themselves months to investigate the issue. CSOF, ¶ 47, 57, and Op. Exs. 17 and 17A.

 The failure to allow Horowitz and Wiederman any reasonable time to respond was because forcing Horowitz and Wiederman to respond to the allegations against them, before the Court required a response, could significantly prejudice Sellers in the Earnout Litigation. Though the Court in the Earnout Litigation eventually substantially denied the motion, Spark had much loftier goals at the time as they were seeking to have Sellers' complaint stricken or an adverse inference. Op. Ex. 25. In addition, not allowing time for a proper response was meant to prejudice Horowitz and Wiederman by creating a worse record for them. In this very case, Defendants continue to prosecute any mistake by Horowitz and Wiederman in the responses that

Defendants forced them to rush in violation of the reasonable notice provision of the Employment Agreement.

However, no reason for ignoring the reasonable period is appropriate because even if Defendants believed Wiederman and Horowitz could not be trusted while an investigation was pending, there was nothing preventing the Defendants from merely putting Horowitz and Wiederman on leave while waiting for a response. In fact, if Horowitz and Wiederman were such a danger, there is no explanation as to why they were even given 24 hours of continued access to Major data rather than suspending that access even during the time Defendants were seeking their response.

The notice and opportunity to respond is a condition precedent to Defendants terminating the contract for cause. Op. Ex. 10, Section 3.2. "Where, as here, 'a condition is required by the agreement of the parties ... a rule of strict compliance traditionally applies." *Markovits v. Venture Info Capital, Inc.*, 129 F.Supp.2d 647, 654 (S.D.N.Y. 2001) (quoting Farnsworth, Contracts § 8.3, at 571 (1990)). Further, "[w]here there is a condition precedent to performance, the party seeking to enforce the contractual obligation bears the burden of proving that the condition has been satisfied." *Needham v. Candies, Inc.*, 2002 WL 1896892, at * 3 (S.D.N.Y. Aug. 16, 2002) (citing *Rachmani Corp. v. 9 East 96th St. Apartment Corp.*, 629 N.Y.S.2d 382, 386 (1st Dep't 1995)), aff'd, 65 Fed.Appx. 339, 2003 WL 1973372 (2d Cir. 2003). In this case, Major was required to give Plaintiff a "reasonable opportunity" to explain his circumstances as a condition precedent *before* Major made a decision to terminate Horowitz "for cause". Major has simply failed to remove issues of fact regarding this particular point. In fact, based on what is discussed

above, it is clear that Major had already made a determination to terminate Horowitz, prior to providing notice, an opportunity to explain, or having any discussion.[18]

Nevertheless, there was also no discussion with Horowitz after sending the email stating the reasons Major felt it had cause to terminate Horowitz. Section 3.2 requires both a reasonable response to respond and discussion between the parties. Allowing Horowitz to merely respond by email, wherein he noted his attorney would be responding in the Earnout Litigation, cannot be considered a discussion. Even if Major believed Horowitz was required to provide an explanation in a different manner than through the motion in the Earnout Litigation, a good faith discussion would require informing Horowitz of that. The refusal by Defendants to even discuss was so stark that they would not even inform Horowitz that they sought a different type of response. Rather, their next move was to simply terminate Horowitz, with no discussion. This was a violation of the Employment Agreement by Defendants.

What is considered a reasonable time to respond is also an issue not appropriate for summary judgment. One must look to the totality of the circumstances to determine what is considered a reasonable time to respond. *Mark IV Indus., Inc. v Kerns*, 12-CV-00043A(F), 2013 WL 12310665, at *12 (WDNY July 18, 2013). Such totality of the circumstances determinations are best left to the finder of fact.

In *Mark IV Indus., Inc. v Kerns*, 12-CV-00043A(F), 2013 WL 12310665, at *12 (WDNY July 18, 2013), even a period of three weeks was not considered a reasonable opportunity to

---

[18] As an aside, Horowitz was never given notice of the potential actions he may have committed that would provide cause for termination. Notice is defined by the Employment Agreement as requiring actual physical notice to be mailed. Op. Ex. 10, Section 5.4. Only an email was sent on March 26. Section 5.4 states the period of notices to be in days, rather than hours, which is additional evidence that there is no plausible reading that Horowitz should only be afforded hours to respond to "for cause" allegation and have that be considered reasonable.

appear given the totality of the circumstances in the case. The Court discussed what the meaning

of "opportunity" was in a similar employment contract context:

> [t]he chance to appear in a court or other tribunal and present evidence and argument
> before being deprived of a right by governmental authority. The opportunity to be heard
> is a fundamental requirement of procedural due process. It ordinarily includes the right to
> receive fair notice of the hearing, to secure the assistance of counsel, and to cross-
> examine adverse witnesses.

*Mark IV Indus., Inc. v Kerns*, 12-CV-00043A(F), 2013 WL 12310665, at *11 (WDNY July 18,

2013) citing Black's Law Dictionary (9th ed. 2009); see also *Yang v Northwell Health, Inc.*, 195

AD3d 662, 665 (2d Dept 2021)(failing to provide notice and reasonable opportunity was deemed

to take the termination of the employment contract out of a for cause reason). The term

reasonable "opportunity" is also used in this case. Horowitz testified he understood that term to

mean that he should be able to retain and consult with counsel on this specific matter. CSOF, ¶

47, 52, 53.

The Court in *Mark IV Industries* also found that the contract required the employer to

present an appropriate time and place for the employee to appear and explain his facts and

circumstances. Similarly, in this case, the Employment Agreement requires Major to only make a

decision <u>after</u> Major provides "a reasonable opportunity to explain the underlying facts and

circumstances". 3.2(a)(ii) Major was legally required to provide Horowitz with a proper

opportunity to appear and explain the circumstances. This includes enough time to hire and

consult with counsel. Major unequivocally did not provide Horowitz with an opportunity to

appear with counsel. CSOF, ¶ 52, 53. Major did not provide Horowitz the forensic report upon

which it based its decision. CSOF, ¶ 47. Major did not provide Horowitz with sufficient time to

even review and respond to the allegations made against him. CSOF, ¶ 52, 53.[19] This is a failure

---

[19] Even if the Court does not accept Horowitz's understanding of the Employment Agreement, there is, at the very
least an issue of fact as to what is considered a reasonable opportunity to appear.

that unequivocally violated the Employment Agreement. Certainly, construing all facts in favor of Horowitz, there is an issue for the fact finder to determine which precludes granting summary judgment.

## IV.    Kroeker's Conflicting Testimony Creates Additional Issues of Fact Preventing Summary Judgment

Nathan Kroeker has given conflicting testimony regarding the document preservation issue which creates issues of fact. At his deposition, Kroeker stated that he did not know about the document deletion issue until March 13, 2019 despite the fact that the evidence is clear that the forensic examination commenced no later than January 22, 2019. Op. Ex. 2, Kroeker Dep., at 205:10-206:11; CSOF, ¶ 32. Kroeker testified that providing Horowitz less than 24 hours to explain the underlying facts and circumstances was required because someone in his position could delete company information if he were given more time to respond. Op. Ex. 2, Kroeker Dep. 228:12-229:8.

However, this is contradicted by Kroeker's declaration as part of this motion wherein he notes that he found out about the document issue in February of 2019. Defendants' Exhibit A, ¶17. There is no explanation as to why the danger he found out about in February of 2019 was so much less dangerous at that time but then suddenly critically dangerous on March 26. Nor are there contemporaneous records to corroborate either version of Kroeker's events. Nor is there an explanation as to why Horowitz could not have simply been denied access to whatever critical company material he could supposedly damage to allow him time to respond while posing no risk to Major.

Further, there is no explanation as to why Major granted themselves at least 2 months (from January 22 to March 26) to perform a forensic analysis and investigation of Horowitz's

conduct but Horowitz was unilaterally granted less than 24 hours and not presented with the report he was supposed to respond to in that 24 hour period of time.

Thus, Kroeker's shifting testimony as to when he was first aware of the conduct that is the alleged basis for terminating Horowitz, for the purposes of summary judgment, must be used against him. The fact that he has conflicting testimony calls all of his statements into question and the finder of fact must determine if Defendants had any legitimate basis to terminate Plaintiff and whether the time Horowitz was given to respond was appropriate under the Employment Agreement.

The circumstances seem to make it clear that there was merely a pretext created and therefore Defendants did not act in "good faith" in allowing Horowitz "to explain the underlying facts and circumstances" of the allegations against him. No explanation by Horowitz would have prevented his termination as his termination was a forgone conclusion.

## V.    The Court Should Not Dismiss the Tortious Interference Claim

Spark and Spark Holdco assert that, as a matter of law, Spark and Spark Holdco could not tortiously interfere with Mr. Horowitz's Major contract because it was protecting Major's economic interests. Spark raised nearly identical legal argument in its motion to dismiss and it was rejected at that time. ECF 54, p. 11-12. There is no reason that it should be dismissed at this stage of the litigation either.

As an initial matter, it is not clear that the entire parent relationship that is at the center of Spark's argument is factually correct. The Court in the Earnout Litigation determined that the assignment of the Major seller interests from NGE to Spark was ***void***, and it appears that Spark does not now have an economic interest in Major based on Judge Oetken's findings. CSOF 6.

In addition, though Defendants assert that the economic interest test requires dismissal at this time, that is not correct. First, it is unclear what economic interests in Major Spark was trying to protect. The document issue had no effect on Major and was a personal issue between Mr. Horowitz and Spark that only existed in the first place due to the Earnout Litigation. In fact, Spark confirmed that Mr. Horowitz reimbursed Spark for the forensic review it did on his Major workstation. Second, the issue occurred in October 2017, and it was not raised until March 27, 2019. *See* Op. Ex 17.

Moreover, the escrow issue related to a separate set of agreements and served as a holdback of funds payable to the Major sellers from their transaction with National Gas & Electric in 2016, not Spark.

Additionally, the economic interest defense is subject to a standard of good faith, which based on the record, cannot be resolved on summary judgment in this case. *Murtha v. Yonkers Child Care Ass'n, Inc.*, 383 N.E.2d 865, 866 (N.Y. Ct. App. 1978) ("(A) corporate officer who is charged with inducing the breach of a contract between the corporation and a third party is immune from liability if it appears that he is acting in good faith as an officer (and did not commit) independent torts or predatory acts directed at another") (internal citation omitted).

In this case, Horowitz has demonstrated repeatedly that Defendants acted to deprive him of an opportunity to be heard and with improper intent, in an effort to deprive him of the consideration he was due under his Employment Agreement. In fact, even arguing the economic interest seems to confirm that when Major was seeking to contact Horowitz directly, without his attorney, that was an effort to circumvent the attorney/client relationship. If Spark's interest are so united with Major's interests, then Major's directly contacting Horowitz about his legal rights

is definitely in bad faith. Nevertheless, issues of fact remain and the tortious interference cause of action cannot be dismissed.

## **<u>Conclusion</u>**

For the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendants' motion for summary judgment and grant such further relief as it deems just and proper.

Dated: April 1, 2022

Respectfully Submitted,
Sarfaty and Associates, P.C.

/s/  Jason Lowe_____
By: Jason Lowe
    Eli Sarfaty
Attorneys for Plaintiff
1 North Sherri Lane
Wesley Hills, NY 10977
(845) 426-5710