**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------------------X
SAUL HOROWITZ,

                               Plaintiff,                    Civil Action No.
                                                              19-cv-07534(DAB)

          - against –

SPARK ENERGY, INC., SPARK HOLDCO, LLC, MAJOR
ENERGY SERVICES, LLC, MAJOR ENERGY ELECTRIC
SERVICES, LLC, and RESPOND POWER, LLC

                                Defendants.
-------------------------------------------------------------------------------X

<u>**PLAINTIFF'S COUNTER STATEMENT OF FACTS**</u>

       Pursuant to Local Rule 56.1 of the United States District Court Southern District of New

York and Rule 56 of the Federal Rules of Civil Procedure Plaintiff, by his attorneys, Sarfaty &

Associates, P.C., submit this Counter Statement of Material Facts ("CSOF") in Memorandum of

Law Opposition to Defendants' Motion for Summary Judgment ("Motion") filed concurrently

herewith:

1. Admit.

2. Denied. On or about August 9, 2021, Spark Energy, Inc. changed its name to Via
   Renewables, Inc. *See* Press Release, Op. Ex. 1

3. Denied. Spark does not maintain a formal structure of companies and operates a group of
   companies interchangeably and as alter egos of one another with identical management to
   the extent it suits Spark's interests. See Kroeker Dep., Op. Ex. 2, at 20:20-21:16; Griffin
   Dep., Op. Ex. 4, at 23:21-25:21. In fact, Michael Grae Griffin, who handled the
   termination of Mr. Horowitz, was unaware of Spark Holdco and the delineation of
   corporate structure in the company, including with private companies owned by Spark
   Chairman Keith Maxwell. Griffin Dep., Op. Ex. 4, at 14:10-14.

4.   Denied. Spark did not acquire Major but acquired membership interests in Major from its then-owners. See First MIPA, Op. Ex. 5 at 2.1.

5.   Admit.

6.   Denied. "Major" was not "dropped down", and it was not dropped down to "Spark". *See* Op. Ex. 6, Second MIPA. Spark Holdco purported to transfer the Major Sellers' ownership interests from NGE to Spark Holdco. *Id*. After a trial in the matter captioned *Horowitz, as Sellers' Representative v. Spark Energy, Inc., et al.*, Southern District of New York Case No. 17-cv-7742, before Judge J. Paul Oetken, the Court determined that the "dropdown" transaction was void. *See* Op. Ex. 7, September 30, 2021 Findings of Fact and Conclusions of Law, p. 19.

7.   Admit.

8.   Denied. The "Earnout Litigation", which is a term used by the Defendants, focused on the calculation of specific earnout payments owed to the Sellers that they believe Spark either miscalculated or willfully did not make. Judge Oetken summarized the matter in his findings of fact and conclusions of law:

> This case arises out of the sale of the corporate entities collectively known as "Major Energy." Defendant National Gas & Electric, LLC purchased Major Energy and then effectuated a dropdown of Major to Spark Holdco, Inc., a non-party affiliate of Defendant Spark Energy Inc. ("SEI"). Plaintiff Saul Horowitz, a former owner of Major Energy suing as Sellers' Representative, claims that the dropdown and related conduct violated the transaction agreements governing the sale and deprived the Sellers of the benefit of certain contingent, performance-based payments to which they were entitled.

*See* Op. Ex. 7, September 30, 2021 Findings of Fact and Conclusions of Law, p. 1.

9.   Denied. The matter was not tried to a jury so no verdict was rendered. *See* Op. Ex. 7, September 30, 2021, Findings of Fact and Conclusions of Law. Moreover, Judge Oetken

did find that NGE's "dropdown" to Spark Holdco was void as it breached the terms of the Major Sellers' original agreement with NGE. *Id*. at 19.

10. Admitted, however this statement is taken out of context as Judge Oetken limited his findings to the specific language of Section 2.7 of an earnout agreement signed in 2016 relating to the sale from the Major Sellers to NGE. See Op. Ex. 7, Earnout Litigation Findings of Fact and Conclusions of Law, p. 27.

11. Admit.

12. Admit.

13. Admit.

14. Admit.

15. Admit. However, the agreement was renewed for additional one year terms. Op. Ex. 10, Section 3.1.

16. Admit.

17. Admit.

18. Denied. Major could terminate Horowitz "for cause" only:

> upon the provision of prior written notice to Executive [Horowitz], in the event of the occurrence of any of the following:... (ii) The Company determines, in good faith, following discussions with Executive providing Executive a reasonable opportunity to explain the underlying facts and circumstances, that Executive has engaged in any of the following actions (provided that the notice of termination shall specify the facts and circumstances giving rise to the termination): (A) Executive has engaged in fraud, gross misconduct, breach of fiduciary

obligations, or misappropriated, stolen or embezzled funds or property from the

Company…

Op. Ex. 10, Section 3.2(a). Thus before effectuating a "for cause" termination under the

Employment Agreement, Major had to first discuss the specific issue it had with

Horowitz and give him a "reasonable opportunity to explain the underlying facts and

circumstances". *Id*. The language of the employment agreement makes it clear that the

above discussion must occur before Major makes a determination (ie the decision must

only be made "following discussion with Executive"). *Id*. The determination must be in

good faith. *Id*.

In addition, Horowitz disputes that he did anything that could be considered "for cause"

under the Employment Agreement. See Op. Ex. 23 and 24. As the memorandum of law

in opposition makes clear, the interpretation of the items listed under "for cause"

termination, such as gross misconduct, must be interpreted in light of a variety of factors.

Had Defendants terminated Horowitz without cause, they would have incurred significant

liabilities including, but not limited to, severance and additional pay. Op. Ex. 10, Section

3.2(e), 3.3. Thus, Defendants had a significant incentive to label Horowitz's termination

"for cause" and a significant incentive ensure that Horowitz did not have his contractual

time to respond and build a record as to why there was no cause for termination. Op. Ex.

10, Section 3.2(a).

19. Denied. The testimony referred to only pertains to Horowitz's general duties. Op. Ex. 9,

39:15-19 (wherein the question asks, "generally speak…") The MIPA makes clear that

Horowitz will have a role as both Sellers' representative and an employee of Major (see,

Op. Ex. 5, preamble and section 11; section 11.1(b) where Horowitz agrees to represent

the Sellers and Buyers acknowledge he will have such duties). In addition the MIPA makes clear that Horowitz, as Sellers' Representative has certain duties and obligations that may be adverse to his employment. See Op. Ex 6, Sections 2.3(c)(where Sellers' Representative would have 30 days to dispute a calculation); 2.5 (where Sellers' Representative needed to give consent for a withholding, such consent Sellers' Representative was not to unreasonably withhold); 3.2 (wherein documents were to be delivered to and from Sellers' Representative); 6.5 (wherein Buyer had to provide proof of funds to Sellers' Representative); 7.5 (affording Sellers' Representative access to certain books and records); 7.6 (needing consent of Sellers' Representative to make certain statements); 8.2(d)(requiring buyer to deliver certain items to Sellers' Representative).

Similarly, the Escrow Disbursement Agreement gave Horowitz certain rights and responsibilities that could be adverse to Defendants. See Op. Ex. 18. However, the exclusive remedy for a violation of the Escrow Disbursement Agreement is provided in Section 4.5 of that agreement. See Op. Ex. 18. There is no provision allowing for additional remedies under Horowitz's Employment Agreement.

Thus, there is no doubt that Defendants were aware that Horowitz was acting as Sellers' Representative and that could, at times, put Horowitz in conflict with Defendants, such as if there was a dispute regarding the earnout discussed in Section 2.2(c). See Op. Ex. 5. At the same time, Defendants agreed that they would enter into, and did enter into, the Employment Agreement with Horowitz. See Op. Ex. 5, Section 7.1(d). This Employment Agreement along with the MIPA, Earnout Agreement, and Escrow Agreement, were all considered, together, as part of the "Transaction Documents". See Op. Ex. 5, Section 1.1,

definition of "Transaction Documents". Thus, Defendants agreed to Horowitz's dual roles with knowledge that he would have sometimes conflicting duties as part of those roles.

20. Denied. Defendants statement is a mischaracterization of Horowitz's testimony. In quoted passage, Horowitz noted that he sometimes did non-Major related activities during the day. Op. Ex. 9, 40:16-42:8.  Horowitz stated that company business was his first priority and it was only if there was nothing left to do that he would do other activities. Op. Ex.9, 40:16-25.  In addition, Horowitz stated these are activities that were permitted. Op. Ex. 9, 39:20-40:5.

21. Denied. The letter attached as Exhibit H is addressed to Levi Moller. Nevertheless, even if that letter was sent to Plaintiff it cannot act to unilaterally change the agreements between the parties. As is explained in paragraph 19, Horowitz had a complex relationship with the Defendants regarding his duties and which the parties agreed to.

22. Denied. Plaintiff did testify that there were inherent conflicts which the parties specifically agreed to. However, this fact is denied to the extent that it ignores that this is something the parties specifically agreed to, as is explained in paragraph 19.

23. Admit.

24. Admit,

25. Admit.

26. Admit that the hold notice stated the quoted language however, Defendants ignore the fact that Plaintiff was in active litigation with Major's then owner, Spark, and that Spark had directed this hold. See generally, *Horowitz v. National Gas & Electric, LLC, et al.*,

17-cv-07742 (JPO). Directing a represented party to speak to an attorney other than their

own about a discovery issue in a case was wrong and possibly litigation misconduct.

27. Admitted that the messages say that; however, this is not a warning, but a discussion

about whether Mark Wiederman's and Saul Horowitz's counsel, specifically hired by

them to represent their interests in the Earnout Litigation against Spark was informed that

Wiederman's and Horowitz's workstations would be imaged for data collection and to

seek advice regarding their legal rights. *See* Op. Ex. 11, Engagement Letter with King &

Spalding; Ex. 13, paragraph 30.

28. Denied. Horowitz actually noted that he did not remember receiving the hold notice and

may have learned of it second hand. Op. Ex. 9, 59:22-60:5; 61:23-62:7; 70:17-71:12.

Horowitz directly stated that he did not think the documents on his desktop were subject

to the litigation hold notice. Op. Ex. 9, 69:10-70:16. Therefore, it is clear that Horowitz

had a different view on the scope of the hold notice. Defendants counsel even, almost

absurdly, asked if Horowitz addressed questions about the litigation hold to Major's

counsel. Op. Ex. 9, 72:6-23. The very proposition that, in the middle of a litigation

between Horowitz and Major's parent, that question about a hold notice, sent to

circumvent the normal discovery procedures, should be addressed to general counsel of

the subsidiary of party Horowitz was in dispute with, shows that the true purpose of this

improper. The hold notice should have been negotiated between Horowitz's attorneys and

Spark's attorneys but was instead sent directly to Horowitz. Op. Ex. 13, paragraph 7.

29. Denied. Plaintiff did not say that he understood that at the time that the notice was sent as

Horowitz does not remember even receiving the hold notice. See CSOF, Paragraph 28.

Since the time of the notice there has been extensive litigation over the litigation hold

notice and Plaintiff now has a different understanding of the hold notice and the testimony cited by Defendants asked Horowitz to reads it that day. Op. Ex. 9, 75:22-76:11 (wherein Horowitz is asked to read the hold notice and is asked his current understanding of a specific passage). Defendants' statement of fact misleadingly states that Horowitz "understood" as if he admitted that he received the hold notice and understood it in the manner Defendants are suggesting before the deposition, something Horowitz denies. See CSOF, Paragraph 28.

30. Admitted that Horowitz moved files from his Major desktop computer to two flash drives. Op. Ex. 13, paragraph 16. However, he turned those flash drives over to Transperfect Legal Solutions ("Transperfect") the document vendor hired by the Sellers in the Earnout Litigation. Op. Ex. 13, paragraph 29. Transperfect did their own analysis. Op. Ex. 12. The total number of files found on Horowitz's drive was 6,962. Op. Ex. 12, paragraph 20. Horowitz had zero documents which had a date created of October 16, 2017. Op. Ex. 12, paragraph 26. Moreover, by March 2019, only 198 files were inaccessible of which, Transperfect was able to locate 130 of the documents. Op. Ex. 12, paragraph 34.  After a motion was made, the Court found that the thumb drives did not need to be turned over and that it is likely no responsive documents were lost. Op. Ex. 22, page 21 ("At the same time, I do not find at this time that it was likely that documents relevant to the claims and defenses in this case were ultimately lost..."); page 22 ("I'm also, for these reasons, denying the request to conduct a further forensic examination of the thumb drives at issue, the eight thumb drives at issue.")

Moreover, as stated above, Horowitz testified that moving files was consistent with Major's historical practices and would not violate any litigation hold notice. See Op. Ex. 13, paragraph 16. Nathan Kroeker testified that his understanding was that every single document on any Spark-affiliated company computer can be collected by Spark for any purpose without exception regardless of circumstances, which is not what the Litigation Hold Notice states. Op. Ex.2, Kroeker Dep. 146:18-22.

31. Admit.

32. Disputed. Griffin testified that a subsequent *imaging* of Horowitz's workstation occurred on March 20, 2019; however, he testified that the forensic analysis was being done before and after that time. Op. Ex. 4, Griffin Dep. 61: 1-21. Griffin testified that he and Nathan Kroeker had been involved and kept abreast of the ongoing investigation into Horowitz since February 2019. *Id*. at 62: 3-16. Moreover, a privilege log prepared by Spark and Major indicates that Marty Lundstrom, Associate General Counsel for Spark at that time, was on emails with Xact Data as early as January 22, 2019, discussing "Forensics on Saul and Wiederman". Op. Ex. 14, Privilege Log.

33. Admitted that the Xact Data Declaration analysis states that; however, the term "deleted" is specifically defined in the Declaration in a manner that is not consistent with the Litigation Hold Notice and that does not take into account data that is preserved on an external device for any reason. Op. Ex. 15, Bentley Decl., ¶ 5.

34. Admitted that the Xact Data Declaration analysis states that but Plaintiff does not have a recollection on this topic.

35. Admitted. Horowitz also stated that he had twenty or thirty years worth of personal information including sensitive financial information and that he was in no way trying to prevent Major from having company information. Op. Ex. 9, 65:21-66:22. Horowitz was particularly sensitive to turning over documents to Defendants because they had an acrimonious relationship. *Id.*; see also, Op. Ex. 9, 146:14-20.

36. Denied to the extent that the paragraph omits that Horowitz also stated that he had twenty or thirty years worth of personal information including sensitive financial information and that he was in no way trying to prevent Major from having company information. Op. Ex. 9, 65:21-66:22. In addition, Horowitz was concerned about privileged information. Op. Ex. 13, paragraph 30.

37. Denied. Plaintiff did not delete any files. Plaintiff merely transferred files to two thumb drives. Op. Ex. 13, paragraph 16. Any loss of documents was accidental. In the Earnout Litigation, the Court found the opposite of what Defendants assert in this statement noting, ""given the proportion of nonresponsive to responsive files located in the various electronic storage locations associated with Horowitz and Wiederman, I find it unlikely that the few recoverable files are relevant. As noted, I think it is likely that they were attempting to delete or transfer nonresponsive files…" Op. Ex. 22, Page 21.

38. Denied. Defendants mischaracterize Plaintiff's testimony and the ruling in the Earnout Litigation directly contradicts what Defendants state. Op. Ex. 22, Page 21, discussed in CSOF Paragraph 37. At Plaintiff's deposition he was asked if he either "transferred or deleted" files. Op. Ex. 9, 67:12-22; 79:12-14 ("Do you recall if you deleted that document or moved it off your computer.") Answering the conjunction of "or" may apply to either item asked about (ie transferring or deleting). He did not say that he deleted

anything. In addition he was unsure noting, "I think they found there were four out of thousands. There might have been a spreadsheet. It was irrelevant to anything. It might have been a personal calculation spreadsheet on something that was part of my desktop that was transferred onto the flash drive." Op. Ex. 9, 67:16-22.

Similarly, at Op. Ex. 9, 72:17-21, Plaintiff merely stated "If it was on my desktop… I copied it over to the flash drive." Plaintiff has always denied intentionally deleting any documents. Op. Ex. 13, paragraph 23. In addition, the specific document mentioned in this statement of fact, Plaintiff did not have any recollection of. Op. Ex. 9, 79:17-19 (Horowitz only noted in the hypothetical, "If it was on my desktop then it was moved to the flash drive.")

39. Admitted that Judge Oetken's order said that; however, negligence is not the standard to be applied in this case, gross misconduct is the standard. Op. Ex. 10, Horowitz Employment Agreement, Section p. 3.2 (a)(ii). In fact, Defendants presented that additional sanctions should be imposed in the Earnout Litigation based on misconduct. Op. Ex. 26, p. 13. Judge Oetken rejected that request and made the following findings:

> As noted, I think it is likely that they were attempting to delete or transfer nonresponsive files, and that their failure to preserve or produce responsive files was careless rather than the intentional destruction of relevant evidence.
> Third, I am not persuaded by defendants' argument in their reply brief that certain actions by plaintiffs, such as connecting various thumb drives to their workstation computers, forwarding e-mails to their Gmail accounts, or uploading a new version of software, likely revealed anything nefarious in terms of an intent to destroy or hide evidence, as opposed to standard conduct on a work computer.
> Finally, I note that my conclusion about relevance and prejudice is informed by the fact that this is fundamentally a breach of contract case, not a case where the plaintiff's private correspondence is particularly likely to be paramount or dispositive, compared to, say, an employment discrimination case where intent is essential. For all those reasons, I am denying any sanction beyond the fees and costs requested by the defendants at this time. I'm also, for these reasons, denying the request to conduct a further forensic examination of the thumb drives at issue, the eight thumb drives at issue. However, this ruling is

without prejudice in the event that further evidence is somehow revealed as to
either the intent, the scope or the nature of the deleted or lost evidence in this
case. That's my ruling on the motions for sanctions.

Defendants never raised any other issues which would show intent to meet the sanctions

standard.

40. Admitted.

41. Denied. Plaintiff responded to the letter Mr. Lancaster by noting "Sellers deny your

assertion that the Petition, if true, constitutes a breach of the MIPA and MEES's

obligations to NG&E. There was no misrepresentation or breach to NG&E… your

assertion in the above referenced letter is false." Ex. C. Horowitz extensively testified

that he did not understand this email to be an indemnification notice. Ex. 9, 106:18-

111:13. Specifically, at Op. Ex. 9, 110:5-8, Horowitz noted, "There was no focus or

realization on my part that all he was trying to accomplish was an indemnification

notice." Then again, at Op. Ex. 9, 111:10-13, Horowitz noted, "When I asked for the

money probably, I don't know, a year later, I did not realize or think that they made an

indemnification claim."

42. Denied to the extent that this statement implies or otherwise states that funds were

released to Horowitz personally. Horowitz directed, in his capacity as Sellers'

Representative, that the funds be released for Sellers' benefit. Op. Ex. 9, 99:16-100:23. In

addition, Horowitz believed he had a duty to seek the release of the funds on behalf of the

Sellers. *Id*.

43. Admitted that the quote in this statement of facts is contained in the letter. However, the

statement lacks the context discussed in CSOF paragraph 42.

44. Denied to the extent that this statement implies or otherwise states that funds were released to Horowitz personally. As the letter makes clear, Horowitz was seeking release of the escrowed funds as Sellers' Representative, which he believed the Sellers had a right to, for the benefit of the Sellers. Op. Ex. 9, 99:16-100:23.

45. Denied. Defendants are correct that all actions taken by Horowitz were solely in his capacity as Sellers' Representative and not connected to his employment with Major. The parties agreed that Horowitz would have a different, possibly conflicting roles in that Horowitz would act as Sellers' Representative while still being employed by Major. See CSOF, paragraph 19. Thus, actions Horowitz took as Sellers' Representative could not be the basis for terminating his Employment Agreement. Nevertheless, Horowitz believed he had the duty to seek the release of the escrow funds on behalf of the Sellers and that there were no pending indemnification claims. Op. Ex. 9, 99:16-100:23, 111:10-13. In addition, Horowitz sought legal advice before sending the letter. Op. Ex. 9, 154:25-155:8.

46. Denied. First, the only Defendant present in the arbitration also present in this action was Spark Holdco, which should not have been since Judge Oetken has found the transaction between NGE and Spark Holdco to be void on its face, giving Spark Holdco no interest in the dispute. *See* Op. Ex. 7, September 30, 2021, Findings of Fact and Conclusions of Law, p. 19. Second, the Claimants did not prevail on a claim of fraud against the Sellers, as it was found that the Sellers did not make misrepresentations to the Claimants. *See* Op. Ex. 19.

47. Denied that Defendants had a good faith belief that Horowitz engaged in actions that arise to the level of at least gross misconduct, breach of fiduciary duty, or misappropriation under his employment agreement. Defendants were well aware that

they had negotiated for Horowitz to have a role as Sellers' Representative while still maintaining employment with Major pursuant to the employment agreement. CSOF, paragraph 19. Thus, claiming that any actions Horowitz took as Sellers' Representative, with advice of counel, could constitute cause under the employment agreement was bad faith.

In addition, the evidence is clear that Defendants had been investigating the document transfer issue for months and had filed a motion in the Earnout Litigation just two days before the email. Op. Ex. 4, Griffin Dep. 62: 3-16 (wherein Griffin stated that he was kept abreast of the investigation starting in February 2019). Nevertheless, Horowitz was given less than 24 hours to respond. Ex. R. In addition never gave Horowitz the forensic analysis or evidence of findings that had been investigated for over two months to be able to formulate a response. Op. Ex. 4, Griffin Dep. 203:4-6.

 The refusal to give Horowitz a copy of the forensic report or allow Horowitz an adequate amount of time to respond was bad faith. This is especially in light of the fact that Horowitz actively was represented at that time by an attorney who was responding to issues regarding the transfer of documents. Op. Ex. 11.

Defendants knew that if they did not fire Horowitz and Wiederman by April 1, they could incur additional liabilities, which is why Defendants unilaterally decided to allow less than 24 hours to respond and did not address these issues directly with Horowitz's counsel. See Op. Ex. 10, bonus provisions. Horowitz was entitled to have advice of counsel before responding and Defendants sought to ensure that he would not be able to have a full response, considering his counsel had just stipulated to a different response schedule on the same issue with Spark's counsel. See docket in *Horowitz v. National Gas*

*& Electric, LLC, et al.*, 17-cv-07742 (JPO). Horowitz believed he had a right to counsel on this issue and was not afforded an appropriate amount of time to retain counsel, review this matter, and formulate a response. Op. Ex. 9, 124:13-131:4.

The above is evidence that Defendants were acting in bad faith and rather than believe that Horowitz had done any action that would constitute cause for termination under the employment agreement, Defendants believed they could create leverage in the Earnout Litigation and regarding the escrow funds, by terminating Horowitz and Wiederman.

48. Admitted that Griffin stated that in the email. The fact that Griffin stated items in an email in no way is an admission to the truth of what was stated in the email.

49. Admitted that Griffin stated that in the email. The fact that Griffin stated items in an email in no way is an admission to the truth of what was stated in the email.

50. Admitted that Griffin gave Horowitz until 2:00 pm the next day to respond which was less than 24 hours after the email was sent. Defendants' Exhibit R.

51. Admitted that Horowitz stated that in the email.

52. Denied. The Defendants' statement of fact leaves out that there was a phone conversation. Defendants' Exhibit R (where the phone conversation is reference). Horowitz stated multiple times that the things that Griffin said were misstatements. *Id*. Throughout the email Horowitz notes that the issue is before the Court and that he will be responding through counsel. *Id*. The fact that Griffin contacted Horowitz directly about an issue that he was represented by counsel on is potentially wrongful litigation conduct. Horowitz noted how wrongful this communication was. Op. Ex. 17 ("Because the two items you raise below are currently being adjudicated in the litigation, its disingenuous and downright deceitful to simultaneously acknowledge on the one hand the events you

mention are in legitimate dispute and require clarity and adjudication from the Court -
and on the other hand to assert the very same events demonstrate gross misconduct.")
Nevertheless, the employment agreement requires Major to provide Horowitz "a
reasonable opportunity to explain the underlying facts and circumstances" of any cause
Major believes it has to terminate the employment agreement. Op. Ex. 10, Section 3.2.
Major simply did not give Horowitz that opportunity to properly retain counsel and
respond in an organized and formal way. Op. Ex. 9, 124:13-131:4. Claiming that
Horowitz refused to participate because he was letting his attorney respond is a gross
mischaracterization of Horowitz's email. Notably, nowhere in Horowitz's email does he
state that he is refusing to participate in an investigation and Defendants merely cite
generally to the email rather than any specific statement for Horowitz to respond to. In
addition, there is no dispute that Defendants did not respond to Horowitz to discuss his
contractual right to a reasonable time to respond and if that fit in with the schedule that
Horowitz proposed.

53. Denied. Horowitz stated he was responding through his attorney in the Earnout Litigation
multiple times throughout the email. See Exhibit R. In addition, as is noted in the
memorandum of law, this statement misconstrues the legal duty Major had to ensure that
Horowitz had an opportunity to respond. Defendants had a duty to ensure that Horowitz
had an opportunity to respond with counsel. Defendants deliberately giving Horowitz less
than 24 hours to respond was an effort to prevent him from formulating a proper
response. Op. Ex. 9, 124:13-131:4. Defendants knew that Horowitz was already, in his
capacity as Sellers' Representative, represented by counsel on this issue and contacting

Horowitz <u>and not his attorney</u> Defendants were attempting to trap Horowitz into making an error, which is improper.

54. Denied. Defendants' Exhibit S makes no reference to "blatant disregard" or that a litigation hold notice was sent by "Mr. Small". Further, the letter does not state that Horowitz was in dereliction of his duties by his actions as Sellers' Representative. Defendant's Exhibit S. As is discussed herein, such a statement is completely false because Defendants knew, and agreed, that Horowitz would serve as both an employee and Sellers' Representative simultaneously. CSOF, paragraph 19. That would require Horowitz to have separate duties and Defendants agreed to that arrangement. *Id*. There was no provision of the Employment Agreement that allowed Major to terminate the Employment Agreement due to actions Horowitz took as Sellers' Representative. Op. Ex. 10. In fact, the Escrow Distribution Agreement provides the remedies for any breach of that agreement and Defendants exercised those rights via arbitration. Op. Ex. 19. In addition, Defendants do not claim that Horowitz took any actions with regards to the escrow funds in his employment capacity with Major. CSOF, paragraph 19.

55. Denied. Kroeker testified that he did not know about the document deletion issue when he met with Wiederman in Houston to discuss his 2018 bonus compensation and upcoming goals and objectives. Op. Ex. 2, Kroeker Dep. 207: 19-24 ("A So. Okay. I just -- I want to be careful not to mislead you here. I know I'm under oath. I don't believe that I was aware of the spoliation issue when I met with Mark turn discuss his performance review, his bonus, and his goal and objectives for 24 2019."). Kroeker submitted a declaration in this action because subsequent to his deposition, other Spark employees testified that Kroeker knew about the "investigation" at least as early as February 2019.

Op. Ex. 4, Grae Griffin Dep. 62:3-16. This calls into serious question all of Kroeker's testimony. Nevertheless, Kroeker's previous testimony directly contradicts this fact.

56. Admitted.

57. Denied. Spark was conducting their forensic review at least as early as January 22, 2019, and Kroeker, by his own admission, did not know about the investigation until at least March 13, 2019. Op. Ex. 14, Privilege Log; Op. Ex. 2, Kroeker Dep. 207: 19-24.

58. Denied. Kroeker said specifically that he did not review a forensic report of any kind, and that he relied on what others told him about the forensic examiner's findings. Op. Ex. 2, Kroeker Dep. 200:11- 201:21.

59. Denied. Kroeker never reviewed a forensic analysis, or if he did, he lied under oath. *See* CSOF, paragraph 58. Additionally, after Horowitz had the opportunity to provide his own forensic evidence, it was determined that that it was "unlikely that the few recoverable files are relevant." Op. Ex. 22, Page 21. This is the exact opposite of what Defendants are claiming. In addition, the Court denied Spark's request to review the thumb drives. Op. Ex. 22, p. 22.

60. Denied. Kroeker said specifically that he did not review a forensic report of any kind, and that he relied on what others told him about the forensic examiner's findings. Op. Ex. 2, Kroeker Dep. 200:11- 201:21.

61. Denied. Documents cited by Defendant in support of their motion indicate that Mr. Horowitz's conduct was not "willful". Op. Ex. 22, p. 21: 9-13. Additionally, Horowitz objects to this statement to the extent it asserts a legal conclusion about willful conduct. It would be inadmissible under Fed. R. Civ. P. 704 if offered by an expert, and would be inadmissible for Mr. Kroeker to state as Spark's Corporate Representative.

62. Admitted that Mr. Kroeker states this "belief"; however, he does not have independent knowledge of any forensic report and data and relied on hearsay to make any determination. Op. Ex. 2, Kroeker Dep. 200:11- 201:21. Moreover, Mr. Horowitz and Mr. Wiederman testified that moving documents between a thumb drive and his computer was a permissible practice in accordance with Major's historical business practices. Op. Ex. 13, paragraph 16; Op. Ex. 9, Wiederman Dep. 40:14-41:2; Op. Ex. 10, Horowitz Employment Agreement. Kroeker and Spark have stated that Major management before April 1, 2016, would have the best knowledge of the company's historical practices. Op. Ex. 2, Kroeker Dep. 122:20-123:2.

63. Denied. Mr. Small gave a sworn statement in this case prior to his deposition that Mr. Horowitz did not engage in gross misconduct. See Wiederman's Opposition, Ex. 23. He has given a similar sworn statement for Mr. Horowitz. Op. Ex. 23. Further, Spark and Major did not rely on Adam Small whatsoever in making their decision to terminate Wiederman. Op. Ex. 2, Kroeker Dep. 188:21-189:24. Op. Ex. 16, Marty Lundstrom Dep. 83:9-18.

64. Denied. See Response to 63.

65. Denied. Levi Moeller stated that such an analysis was fact specific, that he is not an

attorney, and that deletion of documents "could" violate a litigation hold notice.

Defendants' Ex. U, 77-78

Dated: April 1, 2022
       New York, New York

Respectfully Submitted,
Sarfaty and Associates, P.C.

/s/  Jason Lowe_____
By: Jason Lowe
     Eli Sarfaty
Attorneys for Plaintiff
1 North Sherri Lane
Wesley Hills, NY 10977
(845) 426-5710